# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

SYLVIA TORRES,

                   Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                   Defendant.

1:17-cv-00843-NLH

**OPINION**

---

**APPEARANCES:**

BRIAN G. SMITH
COMMUNITY HEALTH LAW PROJECT, INC.
900 HADDON AVE
SUITE 400
COLLINGSWOOD, NJ 08108
    On behalf of Plaintiff

HEATHER ANNE BENDERSON
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there

was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, December 1, 2012. For the reasons stated below, this Court will affirm that decision.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On July 5, 2013, Plaintiff, Sylvia Torres, protectively filed an application for DIB, initially alleging that she became disabled on February 8, 2008. After the SSA denied her DIB application, Plaintiff filed a request for a hearing, along with an SSI application, with the amended disability onset date of December 1, 2012. Plaintiff claims that she can no longer work in her previous positions of office manager, order clerk, and billing clerk because she suffers from at least sixteen impairments, including rheumatoid arthritis, depression and anxiety.

A hearing was held on June 1, 2015, and the ALJ issued an unfavorable decision on June 25, 2015. Plaintiff filed a Request for Review by the Appeals Council, which denied her request on January 13, 2017, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  <u>See</u> <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984).  "[A] court must 'take into account whatever in the
record fairly detracts from its weight.'" Schonewolf v.
Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks
v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th
Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.
474, 488 (1951)).

The Commissioner "must adequately explain in the record his
reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third
Circuit has held that an "ALJ must review all pertinent medical
evidence and explain his conciliations and rejections." Burnett
v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).
Similarly, an ALJ must also consider and weigh all of the non-
medical evidence before him.  Id. (citing Van Horn v. Schweiker,
717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the

> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

## B.   Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past
relevant work, but cannot, given her age, education, and work
experience, engage in any other type of substantial gainful work
which exists in the national economy, regardless of whether such
work exists in the immediate area in which she lives, or whether
a specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[1] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.    If the claimant currently is engaged in substantial
      gainful employment, he will be found "not disabled."

---

[1] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  Because the ALJ issued her
decision prior to that effective date, the Court must employ the
standards in effect at the time of her decision.

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that [s]he is unable to perform his former job, the

burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment [s]he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of degenerative joint disease of the knees, osteoarthritis of the spine, obstructive sleep apnea, Sjogren's syndrome, rheumatoid arthritis, obesity, depression, and anxiety to be severe.  At step three, the ALJ determined that Plaintiff's severe impairments, or her severe impairments in combination with her other impairments, did not equal the severity of one of the listed impairments.  For step four, the ALJ determined that Plaintiff's residual functional capacity ("RFC") precluded her from performing her past work as an office worker, but that she was capable of performing unskilled light work with certain limitations in positions such as housekeeper cleaner, inspector/sorter, and packer, which jobs exist in significant numbers in the national economy (step five).

Plaintiff argues that the ALJ erred in six ways: (1) the

ALJ failed to properly consider the opinion of Plaintiff's treating psychiatrist; (2) the ALJ's residual functional capacity did not properly consider Plaintiff's mental limitations; (3) the ALJ failed to properly consider the opinion of Plaintiff's treating rheumatologist; (4) the ALJ failed to consider the limitations from all of the conditions that she found not to be severe; (5) the ALJ failed to properly consider Plaintiff's pain; and (6) the ALJ improperly applied the "sit and squirm" test. The Court will address these arguments in three parts.

**(1)   Whether the ALJ properly considered the opinions of Plaintiff's treating physicians**

With regard to Plaintiff's argument that the ALJ did not properly consider the opinions of her treating physicians (Plaintiff's first and third proffered bases for appeal), Plaintiff points out that both her treating psychiatrist and treating rheumatologist feel that Plaintiff has very severe limitations, and argues that if the ALJ had applied the limitations determined by her treating doctors, she would have been found to be disabled. That may be true, but the determination of a claimant's disability is not as simple as accepting her treating physicians' opinions.

While a treating physician's opinions are entitled to great

weight, an ALJ may reduce her reliance upon a treating physician's opinions, if it is inconsistent with other medical evidence, and if she explains her reasoning.  Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects").  The ALJ properly did so here.

Over the course of almost two dozen pages, the ALJ detailed the treatment records of Plaintiff's psychiatrist and rheumatologist, along with her other treating physicians and consultative medical examiners.  The ALJ explained which evidence she credited and which evidence she discounted,

including favoring Plaintiff's treating physicians over the two

state agency psychological consultants' opinions.[2]  The ALJ also

explained why she did not credit certain findings of Plaintiff's

treating physicians by noting inconsistencies in their reports

and conclusions based on speculation.  The ALJ's comprehensive

effort to assess the medical evidence and explain the weight she

afforded to it cannot be found to be in error.

**(2)  Whether the ALJ erred in Plaintiff's RFC assessment**

Plaintiff next challenges the ALJ's RFC assessment, arguing

that the ALJ did not properly consider Plaintiff's mental

limitations, the ALJ failed to consider the limitations from all

of the conditions that she found not to be severe in combination

with her severe impairments, and the ALJ failed to properly

consider Plaintiff's pain. (Plaintiff's second, fourth and fifth

proffered bases for appeal.)

In making a RFC determination, the ALJ is required to do

the following:

In determining whether you are disabled, we consider all

---

[2] Cf. Gardner v. Commissioner of Social Security, 2017 WL
4316877, at *5 (D.N.J. 2017) (citing Morales v. Apfel, 225 F.3d
310, 317 (3d Cir. 2000) (noting that "[o]ften, a claimant whose
claim for benefits has been denied argues that an ALJ improperly
afforded greater weight to the state consultative examiners'
assessments than the claimant's own treating physicians'
assessments," but in this case, "however, the ALJ found the
opposite").

your symptoms, including pain, and the extent to which your
symptoms can reasonably be accepted as consistent with the
objective medical evidence and other evidence.  By
objective medical evidence, we mean medical signs and
laboratory findings . . . .  By other evidence, we mean . .
. statements or reports from you, your treating or
nontreating source, and others about your medical history,
diagnosis, prescribed treatment, daily activities, efforts
to work, and any other evidence showing how your
impairment(s) and any related symptoms affect your ability
to work. . . .

20 C.F.R. § 404.1529.  The RFC reflects "what [the claimant] can

still do despite [his or her] limitations," 20 C.F.R. §

416.945(a), and the controlling regulations are clear that the

RFC finding is a determination expressly reserved to the

Commissioner, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2),

404.1546(c), 416.946(c).

In the step two analysis, the ALJ determined that

Plaintiff's degenerative joint disease of the knees,

osteoarthritis of the spine, obstructive sleep apnea, Sjogren's

syndrome, rheumatoid arthritis, obesity, depression, and anxiety

were severe.  The ALJ found Plaintiff's other conditions -

bronchitis, tuberculosis, lumbar degenerative disc disease,

encephalomalacia, hypertension, migraine headaches, pre-

diabetes, gastroesophageal reflux disease (GERD), and allergic

rhinitis – to be non-severe.

Plaintiff takes issue with the ALJ's findings regarding her

non-severe impairments in two ways. First, she disagrees that those impairments are not severe and the ALJ imposed too strict of a standard in assessing those impairments. Second, she contends that the ALJ inappropriately imposed a 12-month durational requirement when deeming those impairments to be non-severe.

The Court does not agree. "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3d Cir. 2003). When an ALJ finds that the claimant has at least one severe impairment, omission of another at step two may be harmless error as long as the impairment is considered regarding the RFC or would not affect the outcome of the case. Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); Rutherford v. Barnhart, 399 F.3d 546, 552–53 (3d Cir. 2005)).

The ALJ conducted a thorough analysis of all of Plaintiff's impairments at step two (R. at 25-30) and explained, at that de

minimis screening stage, why certain impairments were severe and other were not individually vocationally limiting.  Even if the Court were to find that the ALJ erred in this regard, any error would be harmless because the ALJ considered those impairments and the proven limitations of those impairments in combination with her severe impairments at step four in the RFC analysis. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

The ALJ determined Plaintiff's RFC to be the following:

> After careful consideration of the entire record, I find that  the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she could perform work related activities with no use of foot controls, and she could only occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, only occasional kneeling, stooping, crouching or crawling and never be exposed to workplace hazards such as unprotected heights, frequent handling but only occasional fingering, she can understand carry out and remember simple, routine and repetitive tasks involving only simple, work related decisions with the ability to adapt to routine work place changes.

(R. at 34.)

The ALJ then detailed, in addition to the previous observations and conclusion regarding Plaintiff's capabilities

14

and limitations in the prior steps, the factors that warranted
the conclusion that Plaintiff can perform light work with
certain specific limitations. She described the medical
evidence and Plaintiff's testimony, which encompassed
limitations for both her severe and non-severe impairments. For
example, even though the ALJ determined that Plaintiff's lumbar
degenerative disc disease was not severe, the ALJ assigned a
light exertional level[3] for her RFC because of Plaintiff's
subjective complaints regarding her back pain. Absent an
argument – not made here - that merely labeling these
limitations "severe" would have changed the result, the ALJ's
careful and thorough consideration of these limitations renders

_____

[3] See 20 C.F.R. §404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light, medium,
heavy, and very heavy. These terms have the same meaning as they
have in the Dictionary of Occupational Titles, published by the
Department of Labor. In making disability determinations under
this subpart, we use the following definitions: . . . (b) Light
work. Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to
10 pounds. Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with
some pushing and pulling of arm or leg controls. To be
considered capable of performing a full or wide range of light
work, you must have the ability to do substantially all of these
activities. If someone can do light work, we determine that he
or she can also do sedentary work, unless there are additional
limiting factors such as loss of fine dexterity or inability to
sit for long periods of time. . . .").

any error harmless.  The Court therefore finds that the ALJ did not err in the step two analysis in conjunction with her RFC assessment.

With regard to her mental impairments, Plaintiff argues that the RFC analysis only imposes restrictions for understanding, carrying out, and remembering simple, routine and repetitive tasks involving only simple work-related decisions with the ability to adapt to routine work place changes, but fails to address limitations on concentration, persistence, and pace, even though the ALJ assessed Plaintiff as having moderate limitations in those areas in the step three analysis.

The Court is not persuaded that the mental restrictions provided by the ALJ in Plaintiff's RFC do not address Plaintiff's moderate limitations in concentration, persistence, and pace.  First, the step three analysis is not the same as the RFC analysis.  See SSR 96-8p ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various

16

functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF."); Molloy v. Astrue, 2010 WL 421090, at *17 (D.N.J. 2010) ("The moderate mental limitations that ALJ O'Leary found in terms of social function and concentration, persistence and pace were made under Step 3 in order to assess whether Molloy met or equaled any of the impairments . . . . ALJ O'Leary's subsequent finding that Molloy is capable of 'simple' work was made under a Step 4 analysis. . . . There is no inconsistency, actual or theoretical, between ALJ O'Leary's findings that Molloy has moderate mental limitations in social function and concentration, persistence and pace, and that Molloy has the capacity to do simple work.").

Second, the ALJ's inclusion in Plaintiff's RFC of "simple, routine and repetitive tasks involving only simple, work related decisions" squarely addresses Plaintiff's moderate limitations in concentration, persistence, and pace. See Najmi-Nejad v. Barnhart, 75 F. App'x 60, 64 (3d Cir. 2003) (citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (noting that the phrase "simple, routine, repetitive work" would account for "deficiencies in concentration, persistence [and] pace")); Russo

v. Astrue, 421 F. App'x 184, 192 (3d Cir. 2011) (same). Thus, the Court finds that the ALJ properly considered Plaintiff's mental limitations.

Finally, as to the assessment of Plaintiff's pain, the ALJ assessed the pain Plaintiff experienced relative to each of her impairments, and concluded that the light exertional level with postural and manipulative limitations was warranted by Plaintiff's knee and rheumatoid arthritis pain. Plaintiff argues that the ALJ inappropriately discounted her testimony regarding her pain, but the ALJ based her decision on not only her assessment of Plaintiff's testimony regarding her pain, but also the medical evidence and how that evidence corroborates - or not - Plaintiff's subjective complaints. It is not for the Court to second guess the ALJ's conclusions, but only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F.Supp.2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal that applies to the assessment of all of the other standards: A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). The ALJ properly explained with citation to the record evidence why she assessed

Plaintiff's pain as she did.[4]

### (3) Whether the ALJ improperly applied the "sit and squirm" test

In the ALJ's discussion of Plaintiff's pain, the ALJ

considered Plaintiff's demeanor at the hearing.  The ALJ noted:

> I considered the claimant's subjective complaints of pain
> in light of the evidence demonstrating that she was not
> responsive to a number of rheumatoid arthritis medications
> and did not undergo treatment with a biologic agent
> suggested by Dr. Han in December 2014 until April 2015 when
> she only treated with the medication for one month in
> assigning a light level of exertion with additional
> postural and manipulative limitations.  In reaching this
> conclusion, I also considered that the claimant exhibited
> no difficulty sitting through a two hour hearing and no
> difficulty ambulating in and out of the hearing room.

(R. at 44.)  Plaintiff argues that the ALJ should not have

considered her behavior at the hearing in her evaluation of

Plaintiff's claim.  Plaintiff contends that this is because she

---

[4] See also Bembery v. Barnhart, 142 F. App'x 588, 591 (3d Cir.
2005) (citing Hartranft v. Apfel, 181 F.3d 358, 362 (3d
Cir.1999) (citing 20 C.F.R. § 404.1529(c)); Van Horn v.
Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)) ("The ALJ is
required to determine the extent to which a claimant is
accurately stating the degree of pain or the extent to which he
or she is disabled by it.  Under the current statutory regime, a
claimant's statements about her pain and symptoms do not alone
establish disability.  Rather, a disability must be proven
through objective medical evidence.  Furthermore, the ALJ should
consider a claimant's daily activities, the location, frequency,
and intensity of the pain or symptoms, the type and dosage of
pain medication, and any other measures used to relieve the
alleged pain.  In making such determinations, the ALJ is given
great discretion, and such findings are entitled to judicial
deference.").

made a special effort to behave appropriately since it was her first time that she had the opportunity to appear before the person making the decision in her case.

The Third Circuit has held "that an 'ALJ may not substitute his personal reaction to [a] Claimant's responses or physical appearance for the opinion of the treating physicians.'" Garcia v. Commissioner of Social Sec., 94 F. App'x 935, 940 (3d Cir. 2004) (quoting Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986)). But the Third Circuit has instructed that it "'ordinarily defer[s] to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'" Coleman v. Commissioner of Social Sec., 494 F. App'x 252, 254 (3d Cir. 2012) (quoting Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003)); cf. Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983) ("The ALJ could only have reached his conclusion by relying solely on his own non-expert observations at the hearing - in other words, by relying on the roundly condemned 'sit and squirm' method of deciding disability cases.").

This is not the case where the ALJ substituted her own lay observations for that of the medical evidence. Plaintiff's demeanor at the hearing was only one factor in the ALJ's

comprehensive examination of the evidence in the record, and it was only noted in reference to the ALJ's assessment of Plaintiff's subjective testimony regarding her pain. Consequently, the Court does not find that the ALJ inappropriately applied the "sit and squirm" method of determining whether Plaintiff was totally disabled or not.

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled as of December 1, 2012 because Plaintiff retained the ability to perform light work is supported by substantial evidence. The decision of the ALJ is affirmed.

An accompanying Order will be issued.


Date: March 12, 2018                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.